NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| NATIONAL BUSINESS ADJUSTERS, | : | |
| INC., et. al., | : | Civil Action No. 06-698(PGS) |
| | : | |
| Plaintiffs, | : | |
| | : | **MEMORANDUM** |
| v. | : | **OPINION** |
| | : | |
| NUENERGY GROUP, INC., et. al., | : | |
| | : | |
| Defendants. | : | |
| | : | |

**SALAS, Magistrate Judge:**

This matter comes before the Court upon a motion by Defendants NuEnergy Group, Inc. ("NuEnergy") and Paul Hydok (collectively "Defendants")[1] for the imposition of sanctions pursuant to Fed. R. Civ. P. 11. This motion is decided without oral argument pursuant to Fed. R. Civ. P. 78. For the reasons set forth below, Defendants' motion is DENIED.

## I.      BACKGROUND

The facts of this matter are well known to the parties and therefore, in the interest of judicial economy, will not be restated here at length. Plaintiffs, National Business Adjusters, Inc. and its president, Gary Morgan, ("Plaintiffs") were independent sales representatives for a company known interchangeably as Global Energy Resources and AUI ("Global/AUI"). Global/AUI was an independent sales representative for NuEnergy. Defendants claim that

---

[1] At the time this motion was filed, Defendant John Tobelmann had not been served with the Complaint. Therefore, Defendants' motion only addresses the position of NuEnergy and Mr. Hydok.

NuEnergy and Global/AUI always acted independently and were never intertwined for business purposes. On the other hand, Plaintiffs assert that Defendants and Global/AUI were engaged in a joint venture. This disagreement has resulted in certain counts in Plaintiffs' present suit.

On February 20, 2006, Plaintiffs, by and through their attorney, James P. Manahan, filed a Complaint against Defendants. Plaintiffs' Complaint alleges the following causes of action: (1) breach of contract; (2) tortious interference with prospective contractual relations; (3) civil conspiracy; (4) civil RICO pursuant to 18 U.S.C. § 1962(c); (5) civil RICO pursuant to *N.J.S.A.* 2C:41-1, et seq. and (6) Fraud. (See Complaint, Docket No. 1). Plaintiffs base their claims, in part, on three Agreements identified as: (1) the MICROTherm Agreement; (2) the Independent Sales Agreement; and (3) the Texas Utility/SEM Agreement. (Id.).

After being served with the Complaint, by letter dated April 14, 2006, counsel for Defendants advised Plaintiffs' counsel of their intention to pursue Rule 11 sanctions. (Affidavit of Counsel in Support of Defendants' Motion for Sanctions ("Defendants' Affidavit") Ex. E). That letter notified Plaintiffs and their counsel that a proper investigation of their alleged claims would have revealed that Plaintiffs had no meritorious causes of action against Defendants. (Id.).

On August 22, 2006, a pre-trial conference was held before the Honorable Ronald J. Hedges, U.S.M.J. (See Minute Entry for proceedings held before Judge Ronald J. Hedges: Initial Pretrial Conference held on 8/22/2006). Thereafter, on August 23, 2006, the Court entered an Order limiting discovery to liability issues and requiring the Plaintiffs to advise Defendants of the customers for which Plaintiffs claim they are entitled to commissions. (Docket No. 15). The August 23, 2006, Order also scheduled a status conference for November 9, 2006. (Id.). Subsequently, on September 6, 2006, a telephone conference was held between the parties and

the Court, wherein the parties requested clarification of the Court's August 23, 2006, Order. (See Minute Entry for proceedings held before Judge Ronald J. Hedges: Discovery Hearing held on 9/6/2006). At that time, the Court confirmed and clarified that Plaintiffs were to take discovery on the issue of what accounts or customers contracted with Defendants, for which Plaintiffs claim entitlement to damages. (See Defendants' Memorandum of Law in Support of Their Motion for Sanctions, 3). Thereafter, Plaintiffs and Defendants took depositions of Paul Hydok, and Gary Morgan, respectively. (Id.). Plaintiffs conducted no other formal discovery, neither from Defendants nor third parties. (Id.).

After counsel for the parties attended the August 22, 2006, scheduling conference, counsel for Defendants again advised Plaintiffs' counsel of Defendants' intention to pursue Rule 11 sanctions, by letter dated September 6, 2006. (Defendants' Affidavit at Ex. F). The September 6, 2006 letter references the pre-trial conference and details numerous grounds for a Rule 11 Motion. (Id)  The letter provided Plaintiffs' counsel with an opportunity to withdraw the Complaint. Counsel for Plaintiffs did not respond to this letter. (Id.).

On November 13, 2006, the Honorable Ronald J. Hedges entered an Order setting forth a schedule for the filing of motions for summary judgment and ordered that the previously filed motion to dismiss would be deemed withdrawn, but may be re-stated in Defendants' papers in support of summary judgment. (Docket No. 16). Defendants' motion for summary judgment and Plaintiffs' motion for partial summary judgment were filed on January 5, 2007.

## II.    DISCUSSION

### A. Standard for Imposition of Rule 11 Sanctions

Fed. R. Civ. P. 11 sets forth the standard counsel and unrepresented parties must meet

when filing pleadings, motions, or other documents before the Court.  Rule 11 was designed to

discourage the filing of frivolous, unsupported, or unreasonable claims.  *Napier v. Thirty or More*

*Unidentified Federal Agents*, 855 F.2d 1080, 1090-91 (3d Cir. 1988).  The Rule imposes a "duty

to look before leaping and may be seen as a litigation version of the familiar railroad crossing

admonition to 'stop, look, and listen.'" *Lieb v. Topstone Indus.*, 788 F.2d 151, 157 (3d Cir.

1986).  Whenever an attorney or unrepresented party presents a pleading, written motion, or any

other paper to a court, he or she is certifying that to the best of his or her knowledge, information,

and belief, formed after a reasonable inquiry under the circumstances that:

> (1) it is not being presented for any improper purpose, such as to harass or to cause
> unnecessary delay or needless increase in the cost of litigation;
> (2) the claims, defenses, and other legal contentions therein are warranted by existing
> law or by a non-frivolous argument for the extension, modification, or reversal of
> existing law or the establishment of new law;
> (3) the allegations and other factual contentions have evidentiary support or, if
> specifically so identified, are likely to have evidentiary support after a reasonable
> opportunity for further investigation or discovery; and
> (4) the denials of factual contentions are warranted on the evidence or, if specifically
> so identified, are reasonably based on a lack of information or belief.

FED. R. CIV. P. 11(b).  Sanctions must be limited to what is sufficient to deter such conduct in

the future and may consist of, or include, directives of a non-monetary nature, an order to pay a

penalty to the court, or, if imposed upon motion and warranted for effective deterrence, an order

directing payment to the movant of some or all of the reasonable attorneys' fees and other

expenses incurred as a direct result of the violation.  Fed. R. Civ. P. 11(c)(2).

　　　The legal standard to be applied when evaluating conduct that may violate Rule 11 is

"reasonableness under the circumstances." *Ford Motor Co. v. Summit Products, Inc.*, 930 F.2d

277, 289 (3d Cir. 1991).  Reasonableness is "an objective knowledge or belief at the time of

filing of a challenged paper that the claim was well grounded in law and fact." *Id.* (citation omitted).  Moreover, the moving party is not required to make a showing of bad faith.  *Martin v. Brown*, 63 F.3d 1252, 1264 (3d Cir. 1995) (citation omitted).  An "empty head, pure heart" excuse cannot be used by the accused party as justification for filing a frivolous motion.  *Clement v. Public Service Electric & Gas Co.*, 198 F.R.D. 634, 637 (D.N.J. 2001). To comply with Rule 11, counsel are required to conduct "a reasonable inquiry into both the facts and law supporting a particular pleading." *Schering Corp. v. Vitarine Pharmaceuticals, Inc.*, 889 F.2d 490, 496 (3d Cir. 1989).

### B.  Plaintiffs' Alleged Violation of Rule 11

Defendants contend that Rule 11 sanctions are warranted in this case. After reviewing the history of this matter, the Court disagrees.  The threshold question which the Court must decide in determining whether to impose Rule 11 sanctions is whether Plaintiffs' counsel conducted a "reasonable inquiry" into the facts and law supporting the Complaint and Motion for Partial Summary Judgment filed in this matter. *Id.* This includes an analysis of whether counsel had "objective knowledge or belief" that Plaintiffs' claims were "well grounded in law and fact." *Ford Motors Co.*, 930 F.2d at 289.

The facts in this case ride the razor's edge. Defendants are not named parties to at least two of the three contracts upon which Plaintiffs base the majority of their case. However, Plaintiffs claims are not solely based on the three contracts. Rather, it appears as though Plaintiffs' are asserting that Defendants in this case, whether actual parties to the contract or not, played an integral role in the execution of the contracts which resulted in a loss to Plaintiffs.

There is also the matter of the previous arbitration conducted in this case. Defendants

allege that Plaintiffs' claims were fully litigated in the arbitration held between Gary Morgan and Global/AUI. (See Defendants' Memorandum of Law in Support of Their Motion for Sanctions at 11).  This arbitration occurred in 2003, and Plaintiffs received an award of $175,026.00, which represented approximately $99,850.00 in unpaid commissions. NuEnergy and Paul Haydok were not parties to the arbitration. (Id.). Although, Mr. Haydok was a witness. (Id.).

Evidence was presented at the arbitration of NuEnergy's alleged involvement in the actions related to the arbitration. (Complaint, ¶¶ 15-20). The arbitrator did not enter an award against NuEnergy or Mr. Hydok because he did not have proper jurisdiction over them. (Id. at ¶ 18). However, the arbitrator found sufficient evidence that Global/AUI and "NuEnergy were engaged in a joint venture" and, critically, found that "NuEnergy was jointly and severally liable for Plaintiffs' losses." (See Plaintiffs Motion for Summary Judgment, Affidavit of Counsel, Ex. E). The arbitrator even went on to suggest that recovery from NuEnergy might well be available in another forum. (Id.). Importantly, a great deal of the arbitrator's opinion focuses on the actions of NuEnergy. Yet, it was not until the arbitration was held that Plaintiffs learned that the Defendants in this case may have played a role in those transactions which allegedly resulted in Plaintiffs' loss.

Despite the ruling by the arbitrator, Defendants in this case allege that regardless of whether the arbitrator would have found NuEnergy jointly and severally liable, they would not have been "additionally" liable. (Defendant's Brief at 11). Defendants use this argument to support the proposition that whether or not Defendants were a party to the arbitration, the award would have remained the same. (Id.) While Defendants are correct in their interpretation of "jointly and severally" liable, they miss one crucial step...they would have been liable according

to the arbitrator. The only question then, would have been to what degree they were liable. Now certainly, as Defendants point out, they were not bound to the decision of the arbitrator. (Id. at n. 7). However, this Court is not looking to the decision of the arbitrator to determine whether a case against NuEnergy would be viable in this Court as that is a decision on the merits. Rather, this Court is relying on the opinion of the arbitrator to determine whether Plaintiffs in this case "showed reasonableness under the circumstances" when filing this suit. *Ford Motor Co.*, 930 F. 2d at 289.

Relying on the opinion of an American Arbitration Association certified arbitrator is by no means unreasonable. Moreover, it is not unreasonable that Plaintiffs did not focus their pre-complaint investigation on NuEnergy until they learned of NuEnergy's involvement at the arbitration. Finally, there is nothing unreasonable about filing a Complaint against Defendants in this matter without first acquiring more specific information. Any documents or information pertaining to the relationship between NuEnergy and Global/AUI would be found in the hands of Defendants and Global/AUI. At the time of the arbitration, there was no reason for Plaintiffs to inquire about said relationship because they had no knowledge of it. While it appears as though Plaintiffs did not conduct further investigation into their claims before filing suit, beyond the decision of the arbitrator, the facts enumerated by the arbitrator would have given Plaintiffs enough information with which to proceed. Ultimately, it was within reason for Plaintiffs to file a Complaint against Defendants in this case, based solely on the opinion of the arbitrator.

Without more evidence, it will be unlikely that Plaintiffs can sustain this cause of action. However, when determining whether to issue Rule 11 sanctions, this Court can only look at the objective knowledge or belief of Plaintiffs, at the time of the filing of the Complaint, that the

-7-

claims were well grounded in law and fact. *Id.* In this case, the Court finds that Plaintiffs' objective belief at the time the Complaint was filed was grounded in law and fact.

In regard to Plaintiffs' summary judgment motion, Plaintiffs should have engaged in some factual discovery to support the legal and factual allegations contained therein. Whether Plaintiffs' motion would have been timely and sufficiently supported, is not for this Court to decide. Defendants' recourse, should they deem Plaintiffs' motion to be premature or without merit, is to file an opposition setting forth those arguments. Otherwise, Defendants have not met their burden of proving to this Court that the Plaintiffs' motion for summary judgment is in violation of Rule 11.

Inherent powers must be exercised with restraint and discretion. *Republic of the Philippines v. Westinghouse Elec. Corp.*, 43 F.3d 65, 74 (3d Cir. 1994). A primary aspect of a district court's discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process. *Id.* Thus, a district court must ensure that there is an adequate factual predicate for flexing its substantial muscle under its inherent powers, and must also ensure that the sanction is tailored to address the harm identified. *Id.* In exercising its discretion under its inherent powers, the court should be guided by the same considerations that guide it in the imposition of sanctions under the Federal Rules. *Id.* The court must consider the conduct at issue and explain why the conduct warrants sanction. *Id.*

The Court has undergone a thorough analysis of the conduct of Plaintiffs in this case and has looked in great detail at the evidence provided by Defendants. Defendants have failed to provide this Court with an "adequate factual predicate for flexing its substantial muscle" and therefore it must refrain from imposing sanctions at this time. *Id.*

**III.  CONCLUSION**

For the reasons set forth above, Defendants' Motion for Rule 11 Sanctions is DENIED.

An appropriate form of order accompanies this Memorandum Opinion.

s/ Esther Salas

**ESTHER SALAS**
**UNITED STATES MAGISTRATE JUDGE**